**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**JULIAN HEICKLEN,**

**Plaintiff,**

**- against -**

**JASON TOALA, ET AL.,**

**Defendants.**

**08 Civ. 2457 (JGK)**

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Julian Heicklen, appearing pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging that he was falsely arrested by the defendants, New York City Police Commissioner Raymond Kelly, Police Officer Jason Toala, and three other unnamed police officers, designated in the caption as John Does 1, 2, and 3.[1] Defendants Kelly and Toala move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alterative, for summary judgment pursuant to Rule 56. The defendants also move to stay discovery pending the resolution of their dispositive motion. The plaintiff cross-moves for summary judgment and moves to compel the defendants to provide certain discovery materials. The plaintiff also moves for the entry of a default judgment against defendant Toala. Finally, he moves for "contempt proceedings" against the defendants' counsel.

[1] While the Amended Complaint named "Robert Kelley" as the New York City Police Commissioner, there is no dispute that the Police Commissioner's name is "Raymond Kelly."

I

Because both parties cite video evidence not relied on in the Complaint, because the defendants have given the plaintiff appropriate notice pursuant to Rule 12(d), and because the plaintiff has cross-moved for summary judgment, the Court will treat the defendants' motion as a motion for summary judgment. See Rutigliano v. City of New York, No. 07 Civ. 4614, 2008 WL 110946, at *2 (S.D.N.Y. Jan. 2, 2008).

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of informing the district court of the basis for its

motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its initial burden of

showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Vitrano v. State Farm Ins. Co., No. 08 Civ. 103, 2009 WL 3365866, at *1 (S.D.N.Y. Oct. 19, 2009).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). A court may determine that there is no genuine dispute as to certain facts when one party's version of the facts is "blatantly contradicted" by video evidence. Id. at 379-81.

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790

(2d Cir. 1994))). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999). In this case, the plaintiff was advised of the need to respond appropriately to a motion for summary judgment, and indeed the plaintiff asked for summary judgment.

II

The following facts are undisputed or are supported by incontrovertible video evidence unless otherwise noted.

On April 17, 2007, several protesters gathered on or near the stairs and walkway in front of the Isaiah Wall, a monument across the street from the United Nations headquarters in Manhattan. (Am. Compl. 6.) The protest was videotaped by the New York City Police Department and a copy of the video was submitted by the defendants in this case. (Attached as Ex. C to McCann Decl., July 31, 2009, hereinafter "Video.") The plaintiff alleges that the video was "tampered" with because part of his interaction with the police cannot be heard (Video at 11:25), but offers no evidence showing that the video has been altered. The plaintiff does not dispute the accuracy of the visual depictions in the video; in fact, he intended to

offer the video as evidence at trial. (Pl.'s Letter to Max McCann, attached as Ex. C to McCann Decl., Aug. 10, 2009, at 1.)

During the protest, approximately 25 rabbis sat on the stairs closest to the First Avenue sidewalk. (Am. Compl. 6; Video at 0:34.) The plaintiff was standing with others on the stairs behind the rabbis, holding two signs. (Am. Compl. 7; Video at 0:45.) The group blocked pedestrian traffic on the stairs and walkway. A police officer using a loudspeaker (who identified himself as Lieutenant Wolf) ordered the group to leave the area and warned those who refused that they would be arrested. (Am. Compl. 6-8; Video 0:21.) Lieutenant Wolf then advised the group that they were under arrest for disorderly conduct and further warned them that if they resisted arrest they also would be charged with obstruction of governmental administration. (Video at 2:36-3:00.) The police then began to arrest the seated rabbis. (Video at 3:37.) After the warnings, some of those in the group behind the rabbis, including members of the group behind the plaintiff, moved back and left the area, but the plaintiff remained standing behind the seated rabbis. (Am. Compl. 7; Video at 1:33, 3:03, 7:21.) After arresting the rabbis, the police approached the plaintiff. (Am. Compl. 7; Video at 11:18). When the police reached the plaintiff to arrest him, he went limp and fell to the ground. (Am Compl. 7-8; Video at 11:37.) After some time, the plaintiff sat up and

began reading from a pocket Constitution. (Am. Compl. 8; Video at 13:38-14:27.) After an additional warning that he would be arrested for, as the plaintiff states, "refusing to obey the order of a law enforcement officer," the plaintiff went limp again. (Am. Comp. 8; Video at 14:49.) The police then arrested the plaintiff and carried him to a nearby police van. (Am. Compl. 8; Video at 15:17-16:35.)

III

A

The defendants argue that the plaintiff can have no § 1983 claim against defendant Kelly because he was not personally involved in the plaintiff's arrest. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1952 (2009). In this case, the plaintiff's Complaint states that defendant Kelly "probably is an accomplice in the incident" because "[i]t is unlikely that the arresting officers would have tried to stop the demonstration without orders from him or at least his consent." (Am. Compl. 3.) The plaintiff argues that because there were several police officers involved and the

protest was well publicized, defendant Kelly must have been aware of the protest. However, the plaintiff does not make any plausible allegation or offer any evidence that defendant Kelly was personally involved in the plaintiff's arrest. Indeed, the plaintiff admits that the officers may have been acting "under his orders, or at least under department policy." (Pl.'s Letter Br., Aug. 18, 2009, at 4.) There is no plausible allegation that the Police Commissioner could have foreseen the specific circumstances of the plaintiff's conduct and whether it constituted probable cause to arrest. Therefore, the defendants' motion for summary judgment dismissing the plaintiff's Complaint as against defendant Kelly is granted.

B

To prevail on his § 1983 claim, the plaintiff must show that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under the color of state law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). In this case, the plaintiff argues that he was falsely arrested without probable cause. There is no dispute that the right not to be arrested without probable cause is a federal constitutional right protected by the Fourth Amendment. See, e.g., Martinez v. Simonetti, 202 F.3d 625, 634

(2d Cir. 2000). Similarly, there is no dispute that defendant Toala arrested the plaintiff and that he did so under the color of state law.

In analyzing § 1983 claims for false arrest, courts in this Circuit generally look to the law of the state in which the arrest occurred. Davis v. Rodriguez, 364 F.3d 424, 433 & n.7 (2d Cir. 2004). In New York, probable cause is a complete defense to an action for false arrest. Burns v. City of New York, 791 N.Y.S.2d 851, 851 (App. Div. 2005). Probable cause exists if the arresting officer had "information sufficient to support a reasonable belief that an offense has been committed" by the person to be arrested. Id. at 852. In New York, a person is guilty of disorderly conduct when a person "congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law § 240.20(6).

In this case, the police gave several orders for the plaintiff and others to disperse from the stairs and walkway in front of the Isaiah Wall. In his Complaint, the plaintiff admits that he refused to comply with the orders of the police, but argues that the orders were unlawful. (Am. Compl. 13.) The plaintiff argues that because he was standing on the stairs alone, he was not congregating with others and the police could not order him to disperse.

However, the video evidence belies the plaintiff's argument. During the protest, the plaintiff can be seen standing among a crowd of protesters, behind the rabbis who are seated at the bottom of the stairs. (Video at 0:45, 1:34, 3:03.) Lieutenant Wolf then advises the crowd that they are under arrest for refusing to leave the area. (Video at 2:36-3:00.) As the police are arresting the protestors, Lieutenant Wolf orders the crowd on the stairs to disperse, giving a specific warning to "the ones in the back." (Video at 5:00.) He says: "If you do not want to be arrested you are going to have to clear the stairs now. This is not going to wait until we get to you." (Video at 5:00-5:13.) It is only after the other members of the crowd behind the rabbis comply with the police's orders that the plaintiff is left as the last standing demonstrator. (Video at 7:21.) After the police finish arresting the rabbis who have refused to disperse, the plaintiff is placed under arrest. (Video at 11:18-16:35.) The plaintiff cannot escape violating the disorderly conduct law by simply waiting to be the last person arrested. At the time the police gave the order to disperse, the plaintiff was congregating with others and his refusal to comply with the police order gave the defendants probable cause to arrest him.

To the extent the plaintiff argues that the police orders were unlawful because they violated the plaintiff's First

Amendment right to free speech, "the First Amendment is not an absolute shield against a disorderly conduct charge." Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008). There is no First Amendment violation when the government "regulates by reasonable, appropriate and non-discriminatory measures the time, place and manner of use of the streets for public assemblies." People v. Pearl, 321 N.Y.S.2d 986, 988 (App. Div. 1971) (per curiam) (affirming disorderly conduct conviction of demonstrator who was blocking crosswalk); see also Cox v. Louisiana, 379 U.S. 536, 558 (1965). "The authority to issue dispersal orders continues to play a commonplace and crucial role in police operations, particularly in urban areas." City of Chicago v. Morales, 527 U.S. 41, 108-09 (1999) (acknowledging situations where police are called upon to order people not to block sidewalks although finding anti-gang loitering ordinance unconstitutionally vague). In this case, as in Pearl, the protesters were obstructing pedestrian traffic. The dispersal orders of the police were a reasonable, appropriate, and limited means of maintaining order and the free movement of pedestrian traffic. Therefore, defendant Toala had probable cause to arrest the plaintiff when the plaintiff refused to comply with a lawful order of the police to disperse.

Moreover, a person is guilty of obstruction of governmental administration in New York when a person "intentionally

obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function." N.Y. Penal Law § 195.05. Resisting arrest by going limp can constitute obstruction of governmental administration. See People v. Crayton, 284 N.Y.S.2d 672, 674-76 (App. Div. 1967) (discussing predecessor to N.Y. Penal Law § 195.05).

In this case, the plaintiff admits that when the police placed him under arrest he went limp and fell to the ground. (Am. Compl. 7-8.) The police then carried him to a police van. (Am. Compl. 8.) The video evidence corroborates these facts. (Video at 11:37-15:30.) By going limp and forcing the officers to carry him to a police van, the plaintiff "delayed and frustrated" the obligation of the police "to bring a violation of the law to a court of justice as promptly as possible." Crayton, 284 N.Y.S.2d at 676. Therefore, the police had probable cause to arrest the plaintiff for violating New York's obstruction of governmental administration law.

The plaintiff contends that when he asked the police officers why he was being arrested, the only reason they gave was that the plaintiff refused to obey an order of a law enforcement official, without mention of disorderly conduct or resisting arrest. (Am. Compl. 8.) However, the question whether the officers had probable cause to arrest the plaintiff

does not turn on the reason the police provided for the plaintiff’s arrest. See Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004) (stating that police officer’s “subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause”). The question is whether, from an objective perspective, the police had probable cause to arrest the plaintiff for any offense.

In sum, because defendant Toala had probable cause to arrest the plaintiff for disorderly conduct and for obstruction of governmental administration, he did not violate the plaintiff’s Fourth Amendment rights by arresting him. Therefore, the plaintiff’s § 1983 claim against defendant Toala fails.

In any event, defendant Toala had qualified immunity in this case. Qualified immunity shields government officials performing discretionary functions, such as arrests, “from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see, e.g., Iqbal, 129 S. Ct. at 1945-46. Notwithstanding the violation of a clearly established constitutional or statutory right, in the case of an arrest, an officer may still establish qualified immunity under federal law by showing either that “it was objectively

reasonable for the officer to believe that probable cause existed," or that "officers of reasonable competence could disagree on whether the probable cause test was met." Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987); see also Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007); Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002). "Normally, it is only the 'plainly incompetent or those who knowingly violate the law' — those who are not worthy of the mantle of office — who are precluded from claiming the protection of qualified immunity." Moore v. Andreno, 505 F.3d 203, 214 (2d Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Carcares v. Port Auth. of N.Y. & N.J., 646 F. Supp. 2d 412, 426 (S.D.N.Y. 2009). Additionally, police officers are shielded from liability if they reasonably rely on a superior officer's plausible orders, which viewed under all the circumstances, could lead an officer to conclude that probable cause exists. Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003).

In this case, defendant Toala was acting pursuant to the orders of Lieutenant Wolf, who warned the protestors that they would be arrested and then instructed the officers to arrest those who remained. As discussed above, both the superior officer and the arresting officers had probable cause to arrest the plaintiff because the plaintiff both refused to comply with a lawful police order and also resisted arrest. Even if the

defendant Toala did not actually have probable cause to arrest, given the plausible orders from Lieutenant Wolf and his own observation of all of the circumstances, defendant Toala reasonably could have concluded that probable cause existed. Therefore, defendant Toala was protected by qualified immunity in this case.

Because the police did not violate the plaintiff's constitutional rights and because defendant Toala was entitled to qualified immunity, the defendants' motion for summary judgment dismissing the plaintiff's claims is granted and the plaintiff's motion for summary judgment is denied.[2]

C

Because the Court has granted the defendants' motion for summary judgment, the defendants' motion to stay discovery pending the decision of their summary judgment motion is denied as moot. The plaintiff's motion to compel discovery is also denied as moot. The plaintiff makes several additional claims in his Complaint and subsequent papers.

---

[2] The Amended Complaint named William C. Thompson, Jr. and Michael A. Cardozo as additional defendants; however the plaintiff's claims against Mr. Thompson and Mr. Cardozo were dismissed pursuant to this Court's Order dated January 8, 2009.

The Amended Complaint also lists defendants John Does 1, 2, and 3 as "arresting officers." Those arresting police officers have never been made parties in this case. In any event, for the reasons explained above, there is no plausible claim for false arrest. Therefore, the existence of those names in the Complaint should not prevent final judgment from being entered in this case dismissing the Amended Complaint with prejudice.

First, the plaintiff argues that he is entitled to a default judgment against defendant Toala on the ground that defense counsel had not initially filed a Notice of Appearance on behalf of defendant Toala. However, defendants Kelly and Toala moved to dismiss the plaintiff's Complaint within the deadline set by the Court. Therefore, defendant Toala has not "failed to plead or otherwise defend," and default judgment should not be entered. See Fed. R. Civ. P. 55.

Second, the plaintiff argues that the police have not returned the two signs he was holding at the Isaiah Wall when he was arrested. This appears to be a tort claim for conversion. The plaintiff does not allege that there are no remedies at the state level for the return of his property, such that he could make out a denial of procedural due process claim under § 1983. See Zinermon v. Burch, 494 U.S. 113, 128-30 (1990) (explaining that when a state cannot anticipate deprivation a post-deprivation hearing may satisfy due process); McMenemy v. City of Rochester, 241 F.3d 279, 288-89 (2d Cir. 2001) (acknowledging that a post-deprivation remedy can satisfy due process when a pre-deprivation remedy is impractical). While there may be diversity of citizenship in this case, the plaintiff represents that the replacement cost of the signs was $96.30 (Am. Compl. 28), an amount that is less than the requisite jurisdictional amount in controversy. See 28 U.S.C. § 1332(a). As a result,

there is no subject-matter jurisdiction over the plaintiff's conversion claim and, to the extent this Court could exercise supplemental jurisdiction over the claim, it declines to do so. See 28 U.S.C. § 1367(c)(3); see also E & L Consulting, Ltd. v. Doman Indus. Ltd., 472 F.3d 23, 33 (2d Cir. 2006) (noting that district court's refusal to exercise supplemental jurisdiction once federal claims had been dismissed before trial was "proper").

Next, the plaintiff moves for a finding of contempt against the defendants' counsel. The plaintiff alleges, among other things, that defense counsel harassed the plaintiff, illegally requested his Social Security Number, provided false information to the Court, and submitted tampered evidence.

First, the plaintiff has provided insufficient evidence showing that defendants' counsel engaged in harassment. Likewise, there is no showing that the defendants' alleged request of the plaintiff's Social Security Number was illegal. Next, the plaintiff alleges that defense counsel falsely stated to the Court that the plaintiff had not executed a criminal records release form that was sent to him by defense counsel and that defense counsel wrongly stated that criminal proceedings were pending against the plaintiff. The defendants respond that both of these statements were true and provide evidence that a criminal matter is, in fact, pending against the plaintiff.

(McCann Decl., Oct. 28, 2009, Ex. A.) The dispute with respect to the release boils down to a dispute over the fact that the plaintiff did not return the release form requested by the defendants and submitted his own instead. The plaintiff argues that defense counsel should not have represented that the plaintiff did not sign the release. There is no showing of bad faith and the dispute does not justify a finding of contempt. See In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003) (noting that "a finding of bad faith on the part of the attorney is essential to a finding of contempt"). Finally, the plaintiff alleges that defense counsel submitted tampered evidence because the sound is inaudible during a portion of the video the defendants submitted. However, the plaintiff offers no evidence that defense counsel tampered with the video. Therefore, the plaintiff's motion for a finding of contempt against defense counsel is denied.

Finally, the plaintiff makes several allegations about the conduct of his state court criminal proceedings and the alleged conduct of state court judges. However, these allegations are not made against any of the defendants in this case and are not the basis for any relief in this case.[3]

---

[3] The plaintiff complains that he has moved in the New York State Supreme Court to quash the bench warrant against him for his alleged failure to appear in Criminal Court, and that the state court has denied that motion and has failed to consider a motion for reconsideration. (Am. Compl. 18-19.) The plaintiff alleges that the Appellate Division wrongly denied his

CONCLUSION

Defendants Kelly and Toala's motion for summary judgment dismissing the plaintiff's Complaint is **granted**. The plaintiff's motion for summary judgment is **denied**. The defendants' motion to stay discovery and the plaintiff's motion to compel discovery are **denied** as moot. The plaintiff's motion for a default judgment against defendant Toala and the plaintiff's motion for contempt against defense counsel are also **denied**. The Clerk is directed to enter Judgment dismissing the Amended Complaint with prejudice except for any state law claim of conversion, which is dismissed without prejudice. The Clerk is directed to close the case, including all pending motions.

**SO ORDERED.**

**Dated:** **New York, New York**
**February 17, 2010**

John G. Koeltl
**United States District Judge**

application for leave to appeal and explains that he has not filed an appeal with the New York State Court of Appeals because there "is no reason to believe that the State of New York Court of Appeals will behave any differently than the other New York State Courts." (Am. Compl. 20.) As explained above, the Amended Complaint does not set forth any claim against the defendants in this case based on the plaintiff's dissatisfaction with the New York State Courts. In addition, it should be noted that this Court lacks jurisdiction to review and reject a state court decision that the state-court losing party claims has caused that party injury. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (explaining Rooker-Feldman doctrine); Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 89 (2d Cir. 2005) (setting out requirements of Rooker-Feldman doctrine).